IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT; ADA COUNTY FISH AND GAME LEAGUE; and IDAHO BIRDHUNTERS,<br><br>        Plaintiffs,<br><br>v.<br><br>GLEN SECRIST, District Manager, BLM Lower Snake River District; and BUREAU OF LAND MANAGEMENT,<br><br>        Defendants. | Case No. CV-04-167-S-BLW<br><br>**MEMORANDUM DECISION** |

## INTRODUCTION

The Court has before it WWP's petition for fees and costs. The motion is fully briefed and at issue. For the reasons expressed below, the Court will grant the motion and award $21,006.94 to WWP in fees and costs.

## ANALYSIS

In August of 1999, the BLM issued a Final Grazing Decision and supporting EA imposing grazing restrictions on the Hardtrigger Allotment to cure violations of the Fundamentals of Rangeland Health standards. After some permittees appealed that decision, the BLM entered into a Stipulation that eased some of the

previously-imposed restrictions on the condition that the modifications comply with NEPA. The Stipulation was signed by BLM officials and the permittees; WWP was not a party to their negotiations.

The Stipulation states that the current Grazing Permits for the signor permittees "are modified in accordance with [43] CFR 4.477." That regulation gives authority to the BLM to immediately implement the decision by giving it "full force and effect pending decision on an appeal therefrom."

In other words, the Stipulation was a final decision and became effective immediately. If WWP wanted to challenge the Stipulation and enjoin its implementation, it had no choice but to file suit in federal court, and did so on April 5, 2004. The complaint was served on BLM officials two days later on April 7, 2004.

Two weeks later, on April 21, 2004, the BLM notified WWP that (1) a NEPA analysis revealed that the Stipulation did not conform to NEPA, (2) the BLM would not be implementing the Stipulation, (3) while the BLM conducted further NEPA studies, grazing would be governed by the interim conditions set forth by this Court in a related case; and (4) the NEPA analysis would be completed, and new Grazing Permits issued, before the 2005 grazing season. In an effort to transform this notification into a binding commitment, WWP asked the

**Memorandum Decision - 2**

BLM to enter into a written agreement containing these terms.  The BLM refused.

WWP responded by filing a motion for voluntary dismissal with instructions.  The "instructions" sought by WWP were the terms that the BLM had refused to stipulate to earlier.  The Court granted that motion, dismissing the case and requiring the BLM to (1) forego implementation of the Stipulation, (2) complete a new NEPA analysis, and (3) finish the analysis, and issue the permits, in 2005.  *See Order Dismissing Case With Instructions* (Docket No. 19) filed December 8, 2004.

WWP now seeks its attorney fees under the EAJA as the prevailing party.  The BLM objects because the instructions accompanying the dismissal only directed them to do things they already planned to do.

## ANALYSIS

Under the EAJA, the Court "shall award" fees to a "prevailing party" unless the Court finds that the position of the United States "was substantially justified or that special circumstances make an award unjust."  28 U.S.C. § 2412(d)(1)(A).  WWP is the prevailing party here.  Its goal in filing this suit was to prevent implementation of the Stipulation and require further NEPA study.  That is precisely the result it obtained in the dismissal with instructions.

The BLM responds that the relief sought by WWP was precisely what the

**Memorandum Decision - 3**

BLM was going to do anyway, and thus this suit never needed to be filed. The Court disagrees. The Stipulation was a final BLM decision, as explained above. WWP had no choice but to file suit if it wanted to challenge the Stipulation. Only after the suit was filed did the BLM's NEPA analysis indicate that the Stipulation was insufficient. Even then, the BLM refused to enter into any binding commitment to not enforce the Stipulation and conduct further NEPA studies. WWP prevailed by obtaining an enforceable court order that bound the BLM to do these things. *See Ocean Conservancy, Inc. v. National Marine Fisheries Service*, 382 F.3d 1159, 1162 (9th Cir. 2004) (fees awarded under Endangered Species Act to plaintiff who obtained dismissal of its case with instructions giving it "precisely the relief it sought").

Furthermore, the Court cannot find that the BLM's position was substantially justified. The Stipulation was quickly declared insufficient, and the BLM's refusal to enter into a binding agreement with WWP thereafter was promptly rebuffed by the Court when it entered the instructions that gave WWP all the conditions it sought.

The Court therefore finds that WWP is entitled to fees and costs under the EAJA. The EAJA sets a base rate of $125 an hour unless the Court finds that a higher rate is justified by increases in the cost of living or by a special factor such

**Memorandum Decision - 4**

as "the limited availability of qualified attorneys for the proceedings involved." 28 U.S.C. § 2412(d)(2)(A).

Both factors apply here to justify an increase in the hourly rate. First, the $125 rate was set in 1996 and it is obvious that inflation has eroded the value of that rate. The inflation-adjusted rate would be $153.37 an hour, according to WWP's unrebutted calculation, and the Court will accept that rate.

In addition, the Court finds that the rate should be adjusted upward because WWP's counsel have distinctive skills that were necessary in this litigation. Todd Tucci seeks rates of $165 an hour for work done in 2004 and 2005 while Laird Lucas seeks $225 an hour for work done during that period. These sums are reasonable given the skill of counsel and the rates in the community. The Court further finds that the hours spent by WWP's counsel are reasonable.

Finally, the Court finds that the costs of $204.94 are reasonable. The total award of costs and fees is therefore $21,006.94. The Court will enter a separate Judgment to that effect.

DATED: **March 31, 2006**

B. LYNN WINMILL
Chief Judge
United States District Court

**Memorandum Decision - 5**